ALUMOR GARAGE, INC., Landlord, Plaintiff, *v.* GEORGE L. STIVERS, INC., Tenant, and CURB GARAGE, INC., Undertenant, Defendants.

Municipal Court of New York, Borough of Manhattan, First District, December 24, 1926.

Summary proceedings to dispossess — proceeding based on non-payment of rent — defense and counterclaim for difference between rent concededly due and money deposited as security — tenants claim landlord's failure to keep deposit intact constituted conversion — evidence showing landlord invested funds in bonds of State and city of New York warrants finding that there was no impairment of deposit — landlord entitled to assert equitable defense to counterclaim notwithstanding action was brought in Municipal Court of City of New York.

In a proceeding to recover the possession of property for the non-payment of rent, wherein the tenants interposed a defense and counterclaim for the difference between the amount of rent concededly due the landlord and the amount of money deposited as security for the faithful performance of the lease, the plaintiff, as landlord, is entitled to a final order for the amount due as rent where, as against the tenants' claim that the landlord's failure to keep the funds deposited intact constituted a conversion of said funds, the evidence shows that the landlord invested said funds in bonds of the State and city of New York and that, therefore, there was no impairment of the deposit.

While no affirmative equitable right can be enforced by the affirmative action of the Municipal Court of the City of New York, equitable defenses may be interposed for the purpose of defeating the claim asserted and relief may be granted, as in this instance, to the extent of a dismissal of the claim asserted, since there exists a good equitable defense to the counterclaim, based on the fact that the tenants are bound to keep the security good so long as they remain in possession.

PROCEEDING to recover possession of property for non-payment of rent and taxes.

*Louis Rosenberg,* for the plaintiff.

*Lee, Smyth, Wise & Bond* [*Eugene M. Strouss* of counsel], for the defendants.

LAUER, J. This is a proceeding brought to recover possession of the property 195–199 Washington street, borough of Manhattan, New York city, for the non-payment of rent and taxes amounting to $8,172.67. At the time of the trial I found as matter of fact that the amount due to the landlord at the commencement of the proceeding, November 23, 1926, was $4,190.56.

The important issue in the case arises because of the separate

defense and counterclaim interposed by the tenant. The tenant seeks to offset and counterclaim the sum of $16,750 deposited by it " for the faithful performance by the lessee of each and every term, covenant and condition " of the lease. The tenant claims that the landlord appropriated to its own use out of the said sum of $16,750 substantially the whole thereof, in violation of the terms of said agreement. The tenant asks judgment against the landlord for the difference between the amount admitted to be due to the landlord and the sum of $16,750.

It appears by the uncontradicted testimony of Louis Rosenberg, the attorney for the landlord, that pending the completion of the building which was the subject-matter of the lease, the security was to be paid from time to time to Rosenberg to be retained by him until the completion of the operation or the commencement of the term and to be then turned over to the landlord. It appears that some of the payments were made direct to the landlord and others to the landlord's attorney, Rosenberg. According to the evidence, the building was completed on or about the 15th of May, 1926, at which time the term of the lease commenced, that the last installment of the deposit of $16,750 was paid by the tenant about May 1, 1926, and that on or before the 15th of May, 1926, when the term commenced, all the moneys which had been given to Rosenberg as security were turned over to the landlord.

The undisputed evidence shows that the bank balance of the plaintiff on December 30, 1925, was $2,961.91; on June 30, 1926, $2,289.84, and on November 23, 1926, the date of the commencement of this proceeding, $2,673.39. The tenants claim that the failure of the landlord to keep intact the moneys deposited as security for the faithful performance of the terms of the lease constituted a conversion of the moneys so deposited, for which they are entitled to counterclaim.

In support of their contention the tenants rely upon the case of *Matter of Atlas* (217 App. Div. 38, decided by the Appellate Division for the Fourth Department on May 19, 1926). In that case the sum of $5,000 was deposited by the lessee under the terms of a lease which provided that the amount deposited should be held " in escrow as security for performance of this lease and every condition thereof and shall apply to the last months' rent of the term herein, on the conditions hereinafter set forth." It was there held that the deposit of the fund in the business account of one of the lessors and the reduction of such account to less than $29.38 was a conversion of the fund, the property of the lessees.

The security clause under the lease between the landlord and

26

the tenants in this proceeding, constituting section 17 of the lease, is as follows: "As security for the faithful performance by the lessee of each and every term, covenant and condition herein contained, by the lessee expressly or impliedly assumed or agreed to be performed, or for the performance of which the lessee is obligated by law, the lessee agrees to pay and deposit with the lessor the sum of $16,750, in manner and form following:" Then follows a statement of the amounts and times of payment. The paragraph then continues:

"The full amount of the said security shall be retained by the lessor until the date fixed for the natural ending of the term and upon full compliance by the lessee to be applied towards the payment of the rental for the last six months of the demised term; that the security in question, in the event of noncompliance by the lessee with the terms of this instrument, to be applied upon the date fixed for the natural ending of the term, towards reimbursement to the lessor, its successors and assigns, for any damage sustained by reason of such noncompliance, and not theretofore otherwise satisfied, discharged or paid. The said security shall bear interest at the rate of four per cent. per annum from the dates of the respective deposits, due semi-annually and to be credited on account of the rental becoming due the first day of January and July of each and every year."

The language of the security clause in the lease in the case of *Matter of Atlas* (*supra*) on which the tenants rely, is interpreted to mean "that the sum was paid to the lessors as a fund continuing to belong to the lessee, but intrusted to the lessors to hold as security against defaults of the lessee in accordance with the terms of the lease, and finally, if not previously required to make good defaults of the lessee, to be applied in payment of the rent for the last months of the term."

In substance, it seems to me that the proper interpretation to be placed upon the terms between the landlord and the tenants in this proceeding is the same as that quoted from the decision of the court in the case *Matter of Atlas.*

The opinion of the court in the *Atlas* case then proceeds as follows: "Unless used to compensate lessors for lessee's default, such sum was to be held by the lessors intact on deposit with some bank, until its application in payment of the rent for the last months of the term."

I can find nothing in the statement of facts or in the evidence so far as it is contained in the opinion which discloses an agreement by the lessors to keep the moneys "intact on deposit with some bank" unless it be the use of the term "in escrow." There is no

provision of that character in the lease between the parties in this proceeding. The parties do not dispute the fact that the moneys which were deposited under the terms of this lease by the lessee with the lessor in effect constituted trust funds to be used and employed by the landlord for no other purpose than that specified in the lease. Of this there does not seem to be any question. It does not, however, seem to me to be necessary for the landlord to keep this sum " intact on deposit with some bank."

The law on this subject is well stated by Professor Wormser in his editorial in the New York Law Journal of October 5, 1926, relative to this case of *Matter of Atlas:* " The learned court's decision, as respects the relationship between a landlord and tenant in reference to the funds placed in the landlord's hands as security, is sound, and gives to the lessee the full protection needed, as well as amply protecting the landlord. It would seem proper, indeed, that inasmuch as the landlord is in effect holding the deposit as trustee for the tenant, he should in no case be allowed to put the security funds in his general account, but should be restricted to keeping the funds either in a special account or to investing the funds in such securities as those in which trustees are authorized to invest trust funds."

In the present proceeding the evidence shows that the landlord invested the moneys in bonds of the State of New York and city of New York, and there were produced in court at the trial bonds of that character of the par value of $25,000, which the uncontradicted testimony shows were the property of the landlord and in which the moneys on deposit under this lease were invested. Such investments undoubtedly constitute valid investments for trust funds under the laws of this State. It is true that no separate account was kept by the landlord in respect to the deposit under the present lease. The evidence also fails to show that these bonds or any part thereof were earmarked in any way to indicate that they constituted an investment of the funds deposited by the lessee under the terms of the lease between the landlord and the tenants. However, the proof is uncontradicted, as I have stated, that the sum deposited was invested in these bonds, and in the absence of other proof or any question on that score, I must assume that that testimony was true. Accordingly I hold that there was no impairment of the sum deposited at any time.

Under these circumstances I do not believe there was any conversion established in this case. No conversion can be predicated on the evidence so far as I can see of any of the moneys deposited by the tenants under the terms of the lease either with the landlord personally or with Mr. Rosenberg, its attorney, prior to May 15,

1925, when the term of the lease commenced. Accordingly, I hold that the defense and counterclaim are not made out.

I think the tenants must fail in the counterclaim in any event. The opinion in the case of *Matter of Atlas* (*supra*) states: " If the lessee continues in possession under the lease, his obligation to keep the $5,000 deposit with the lessors also continues. A decision in his favor here does not destroy this obligation and in a proper action, the lessee will doubtless be·compelled to restore the deposit to the lessors." The court, however; held that since that case arose in the City Court of Niagara Falls, neither that court nor the court to which it was removed, the County Court of Niagara county, had full equity powers. The court stated, " it is impossible in this case to determine completely the rights of the parties." It is true that no affirmative equitable right can be enforced by the affirmative action of the Municipal Court of the city of New York but equitable defenses may be interposed in this court for the purpose of defeating the claim asserted and relief may be granted to the extent of a dismissal of the claim asserted. (*Geller* v. *Kings County Mortgage Co.*, 97 Misc. 707, and cases there cited.)

Assuming, therefore, that the obligation of the tenant to keep good the security continued so long as the tenant remained in possession, the counterclaim of the tenant in this proceeding, who remains in possession and seeks a reduction of the security, ought not to prevail in equity. There exists, therefore, in my opinion, a good equitable defense to the counterclaim.

It follows, therefore, that the landlord is entitled to final order, the amount due the landlord being fixed, as stated at the time of the trial, at $4,190.46. Submit order.